IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEVON ENERGY PRODUCTION CO.,        §
L.P., et al.,                       §
                                    §
            Plaintiffs,             §
                                    §
v.                                  §        CIVIL ACTION NO. H-06-2992
                                    §
GLOBALSANTAFE SOUTH AMERICA,        §
et al.,                             §
                                    §
            Defendants.             §

## MEMORANDUM OPINION AND ORDER OF TRANSFER

Plaintiffs, Devon Energy Production Company, L.P. and Pogo
Producing Company, bring this action against defendants,
GlobalSantaFe South America, LLC, GlobalSantaFe Corporation,
GlobalSantaFe Drilling Company, GlobalSantaFe Offshore Services,
Inc., GlobalSantaFe Drilling Development, Inc., Global Marine,
Inc., Global Offshore Drilling, Ltd., Santa Fe International, Inc.,
GlobalSantaFe Hungary Services, Applied Drilling Technology, Inc.
(collectively, the GSF defendants), and Chevron, U.S.A., Inc., for
negligence, strict liability, strict products liability, breach of
warranty, maritime liability, trespass, and violation of applicable
state or federal statutes, rules, or regulations.  Pending before
the court is Defendants' Motion to Dismiss and Alternative Motion
to Transfer Venue (Docket Entry No. 18).  For the reasons explained
below, the defendants' motion to dismiss will be denied and their
motion to transfer will be granted.

## I.  **Factual Allegations**

Plaintiffs allege that in September of 2005 the GSF defendants and Chevron[1] operated the Adriatic VII, a floating vessel capable of being jacked up out of the water on its three giant legs and used to drill oil and gas wells in coastal waters.  Plaintiffs allege that while working on the Outer Continental Shelf in the Gulf of Mexico adjacent to the coast of western Louisiana at Eugene Island Block 338, which was leased to Chevron by the government, the Adriatic VII broke loose from her location under the force of wind and waves generated by Hurricane Rita and rammed into an offshore oil and gas platform known as the South March Island 128-A (the SMI 128-A) and subsequently ran aground near the mouth of the Mermentau River.  Plaintiffs allege that "[u]nder the law, where as here, the Adriatic VII broke loose of its location and then rammed a fixed platform, it is the rig's owner and operators -- GSA Corp., GlobalSantaFe and Chevron -- who are presumed to be at fault for the property damage and the resulting economic losses suffered by [plaintiffs]."[2]

## II.  **Motion to Dismiss or Transfer**

Asserting that the plaintiffs make no venue allegations in their Original Complaint, five of the ten GSF defendants

---

[1]On February 28, 2007, plaintiffs filed a Stipulation of Dismissal as to Defendant Chevron Corporation, Docket Entry No. 29, and on March 1, 2007, the court entered an Order of dismissal as to Chevron Corporation, Docket Entry No. 31.

[2]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 8, ¶ 28.

(GlobalSantaFe Corp., GlobalSantaFe Drilling Co., Global Marine Inc., GlobalSantaFe Hungary Services LLC, and Applied Drilling Technology, Inc.) move the court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391 for improper venue or, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1406(a) or 1404(a) to the Western District of Louisiana.  Plaintiffs respond that "venue in the Southern District of Texas is unquestionably proper,"[3] and that the GSF defendants have "failed to carry the burden of demonstrating that Lafayette is more convenient than Houston for a trial of this case."[4]

**A.   Motion to Dismiss**

Asserting that venue is not proper in the Southern District of Texas, five of the GSF defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(3).

### 1.   Standard of Review

The GSF movants seek dismissal of all the claims asserted against them under Federal Rule of Civil Procedure 12(b)(3) for improper venue.  "Once a defendant raises the issue of proper venue

---

[3]Plaintiffs' Response to the GlobalSantaFe Defendants' Motion to Dismiss for Improper Venue and Preliminary Response to Motion to Transfer Venue, Docket Entry No. 25, p. 3.

[4]Plaintiffs' Response to GlobalSantaFe's Motion to Transfer Venue, Docket Entry No. 35, p. 2.

by motion, the burden of proof is placed upon the plaintiff to sustain venue." McCaskey v. Continental Airlines, Inc., 133 F.Supp.2d 514, 523 (S.D. Tex. 2001).  In deciding whether venue is proper, the court must accept facts alleged in the well-pleaded complaint as true.  See id.

### 2.   Venue Under OCSLA and Maritime Law

Citing the general venue statute, 28 U.S.C. § 1391(b)(1)-(2), the GSF movants argue that the Southern District of Texas is the wrong venue for this dispute because "the [d]efendants do not all reside in Texas,"[5] and because "all or a substantial part of the events or omissions giving rise to the claim occurred in Louisiana and a substantial part of the property that is the subject of the action is situated in Louisiana."[6]

Plaintiffs counter that venue is proper in the Southern District of Texas because the court's subject matter jurisdiction over their claims is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, et seq., and "Maritime Liability" under 28 U.S.C. § 1333.[7]  Asserting that the OCSLA provides that "[p]roceedings with respect to any . . . [OCSLA] case or

---

[5]Defendants' Motion to Dismiss and Alternative Motion to Transfer Venue, Docket Entry No. 18, p. 2.

[6]Id.

[7]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 5, ¶ 15.

controversy may be instituted in the judicial district in which any defendant resides or may be found . . .," 43 U.S.C. § 1349(b)(1), plaintiffs argue that venue is proper in the Southern District of Texas because "most of the defendants have their principal place of business in Houston, Texas."[8]  Plaintiffs also argue that if, "[b]ecause of the location of the allision, . . . [the] OCSLA does not apply, then Admiralty jurisdiction applies."[9]  Plaintiffs argue that venue is proper in this district under admiralty jurisdiction because venue in admiralty cases is proper in any court with personal jurisdiction over the defendant, and only two GSF defendants, GlobalSantaFe Offshore Services, Inc. and GlobalSantaFe South America, LLC -- neither of whom have joined in the pending motion to dismiss or transfer -- have challenged the court's ability to assert personal jurisdiction over them.[10]  Because the defendants who have joined in the motion to dismiss or transfer have all been served, have all answered, and have not asserted lack of personal jurisdiction, plaintiffs argue that proper venue in this district has been established as a matter of law.

---

[8]Plaintiffs' Response to the GlobalSantaFe Defendants' Motion to Dismiss for Improper Venue and Preliminary Response to Motion to Transfer Venue, Docket Entry No. 25, p. 4.

[9]Id.

[10]See Original Answer of Defendants GlobalSantaFe South America, et al., Docket Entry No. 13, p. 1 (asserting that this court lacks personal jurisdiction over defendants GlobalSantaFe South America, LLC and GlobalSantaFe Offshore Services, Inc., and that these defendants reserve their right to seek dismissal on this basis).

(a)  OCSLA Venue

"OCSLA not only defines the law applicable to the [Outer Continental Shelf], but also grants federal courts jurisdiction over disputes occurring there."  Tennessee Gas Pipeline v. Houston Casualty Insurance Co., 87 F.3d 150, 154 (5th Cir. 1996) (applying OCSLA jurisdiction to claim for property damages to a platform fixed to the Outer Continental Shelf caused by an allision with a tug).  Under the heading "jurisdiction and venue of actions" OCSLA provides that

> [p]roceedings with respect to any such case or controversy [i.e., case or controversy governed by OCSLA] may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose.

43 U.S.C. § 1349(b).  Asserting that it is undisputed that the principal place of business for many of the GSF defendants is Houston, Texas, plaintiffs argue that venue for the OCSLA-governed claims asserted in this action is proper in this district.[11] Because OCSLA proceedings may be instituted in the judicial district in which any defendant may be found, and because the corporate defendants with principal places of business in Houston, Texas, may be found in the Southern District of Texas, the court concludes that venue under OCSLA is proper in this district for claims asserted against those defendants (i.e., GlobalSantaFe

---

[11]Plaintiffs' Response to the GlobalSantaFe Defendants' Motion to Dismiss for Improper Venue and Preliminary Response to Motion to Transfer Venue, Docket Entry No. 25, p. 4.

Corp., GlobalSantaFe Drilling Co., Global Marine Inc., and Applied
Drilling Technology, Inc.).  See Shell Oil Co. v. F.E.R.C., 47 F.3d
1186, 1195 (D.C. Cir. 1995) (observing that Pennzoil's case could
have been filed in the district court for the District of Columbia
given F.E.R.C.'s presence there).  See also LaSalle Marine Services
v. Apache Corp., 1994 WL 180116, *1 (E.D. La. 1994) (venue proper
under OCSLA in district where corporate defendant had its principal
place of business).  The only moving defendant whose principal
place of business is not alleged to be Houston, Texas, is
GlobalSantaFe Hungary Services LLC, an entity that plaintiffs
allege "is a foreign corporation which is transact[ing] business in
the state and judicial district, . . . [but] has not appointed an
agent for service of process in Texas."[12]  However, since the Fifth
Circuit has concluded that "if a corporation is doing business in
a district . . . it may be found there," Manning, 366 F.2d at 698,
accepting the facts alleged in plaintiffs' original complaint as
true, the court concludes that venue for the OCSLA claims asserted
against GlobalSantaFe Hungary Services, LLC is also proper in this
district because plaintiffs have alleged that GlobalSantaFe Hungary
Services, LLC transacts business in this district.

    (b)  Maritime Law Venue

    Applicability of OCSLA does not give rise to an inference that
other provisions of law, e.g., general maritime law, do not also

--------

[12]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 4
¶ 12.

apply.  Tennessee Gas Pipeline, 87 F.3d at 154 (citing 43 U.S.C. § 1333(f)).  The Fifth Circuit has "declared that where OCSLA and general maritime law both could apply, the case is to be governed by maritime law."  Id. (citing Laredo Offshore Constructors, Inc. v. Hunt Oil Co., 754 F.2d 1223, 1229 (5th Cir. 1985) ("[W]here admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law.")).

Under general maritime law "venue and personal jurisdiction analyses merge.  If the action is in personam, venue lies wherever valid service could have been made upon the defendant corporations."  In re McDonnell-Douglas Corp., 647 F.2d 515, 516 (5th Cir. 1981) (citing Gipromer v. SS Tempo, 487 F.Supp. 631, 633 (S.D.N.Y. 1980)).  See also Empty Barge Lines II, Inc. v. DREDGE LEONARD FISHER, 441 F.Supp.2d 786 (E.D. Tex. 2006).  "Hence, a court sitting in admiralty has personal jurisdiction over any defendant sued in personam whom the court can reach with process."  Id. (quoting H & F Barge Co. v. Garber Bros., 65 F.R.D. 399, 404 (E.D. La. 1974)).

The gravamen of defendants' venue challenge is that two of the GSF defendants, GlobalSantaFe South America, LLC and GlobalSantaFe Offshore Services, Inc., lack sufficient contacts with the Southern District of Texas to be subject to personal jurisdiction there.  Although defendants fail to submit any evidence in support of their argument that GlobalSantaFe South America, LLC lacks sufficient

-8-

contacts with this district to be subject to personal jurisdiction, they submit the affidavit of Walter A. Baker, Secretary and Assistant Treasurer of GlobalSantaFe Offshore Services, Inc., as evidence that the entity lacks sufficient contacts with this district to be subject to personal jurisdiction here. Baker states that GlobalSantaFe Offshore Services, Inc. does not maintain offices in Texas, does not do business in Texas, does not have a registered agent for service of process in Texas, and does not have any contacts with Texas that could properly be characterized as subjecting it to personal jurisdiction.[13] Since plaintiffs have not countered any of Baker's statements, the court concludes that under general maritime law venue is proper in this district against all the GSF defendants except GlobalSantaFe Offshore Services, Inc. See McCaskey, 133 F.Supp.2d at 523 ("[i]t is well established that in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant").

(c)  Conclusions on Defendants' Motion to Dismiss

Because the court has concluded that venue is proper in this district for claims asserted under OCSLA, 43 U.S.C. § 1349(b), against all the moving defendants, and that venue in this district is also proper for claims asserted under general maritime law

_____

[13]Id. at p. 6, citing Affidavit of Walter A. Baker, Exhibit A attached to Docket Entry No. 18.

against all the GSF defendants except non-movant GlobalSantaFe Offshore Services, Inc., the court is not persuaded that venue is improper in this district for any claims asserted against any of the moving defendants.  Therefore, defendants' Rule 12(b)(3) motion to dismiss for improper venue will be denied.

**B.   Motion to Transfer**

As an alternative to dismissal under Rule 12(b)(3), the GSF movants seek transfer of all the claims asserted against them to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a) or 1406(a).  Since the court has concluded that venue is proper in this district, the defendants' motion to transfer will be reviewed under 28 U.S.C. § 1404(a), which permits transfer from a proper venue instead of to § 1406(a), which permits transfer from an improper venue.  Section 1404(a) has been held to apply to the transfer of maritime cases.  See In re McDonnell-Douglas, 647 F.2d at 516-17.  See also Boutte v. Cenac Towing, Inc., 346 F.Supp.2d 922, 925 (S.D. Tex. 2004).

1.   Standard of Review

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  See also In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004), and In re

-10-

Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir.), cert. denied, 124 S.Ct. 826 (2003). The purpose of § 1404(a) "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense . . .'" Van Dusen v. Barrack, 84 S.Ct. 805, 809 (1964) (quoting Continental Grain Co. v. The Barge FBL-585, 80 S.Ct. 1470, 1474, 1475 (1960)). Movants bear the burden of demonstrating that change of venue under § 1404(a) is warranted by showing that the balance of convenience and justice weighs heavily in favor of a transfer of venue. See Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966) ("plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed"). The decision to transfer a pending case is committed to the district court's sound discretion. See In re Volkswagen, 371 F.3d at 203.

The threshold issue under § 1404(a) is whether the plaintiffs' claim could have been filed in the judicial district to which transfer is sought. In re Volkswagen, 371 F.3d at 203 (citing In re Horseshoe, 337 F.3d at 433. If so, the court must then examine "the convenience of the parties and witnesses." Id. "The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." Id. (quoting Action Indus., Inc. v. U.S. Fidelity & Guar. Co., 358 F.3d 337, 340 (5th Cir. 2004)).

2.   <u>Threshold Inquiry</u>

The first issue that a district court must address in
ruling on a motion to transfer under § 1404(a) is the
question of whether the judicial district to which
transfer is sought qualifies under the applicable venue
statutes as a judicial district where the civil action
"might have been brought."

<u>In re Horseshoe Entertainment</u>, 337 F.3d at 433.   <u>See also</u> <u>In re</u>

<u>Volkswagen AG</u>, 371 F.3d at 203.   Although defendants assert that

venue in the Western District of Louisiana is entirely
appropriate under the relevant venue considerations of 28
U.S.C. § 1391(b)(2) because all or a substantial part of
the events giving rise to the claims at issue arose in
the Western District of Louisiana and [because] that is
where a substantial part of the property at issue is
located,[14]

defendants have neither shown why the venue considerations of 28

U.S.C. § 1391(b)(2) apply to the OCSLA and general maritime claims

asserted in this action, nor shown that they would be subject to

personal jurisdiction in the Western District of Louisiana.

Although defendants merely assert that "with limited exception

pertaining only to parties unrelated to this casualty, the

Defendants should be subject to personal jurisdiction in the

Western District of Louisiana,"[15] plaintiffs do not dispute that

this action could have been brought in the Western District of

Louisiana.   Instead, plaintiffs argue only that "GlobalSantaFe has

failed to carry the burden of demonstrating that Lafayette is more

_____

[14]Defendants' Motion to Dismiss and Alternative Motion to
Transfer Venue, Docket Entry No. 18, p. 7.

[15]<u>Id.</u>

-12-

convenient than Houston for a trial of this case."[16]  Regardless of these deficiencies in the parties' respective arguments, the court concludes that this action could have been brought in the Western District of Louisiana under OCSLA because plaintiffs allege that the causes of action asserted in this case occurred adjacent to the coast of western Louisiana.  The court also concludes that this action could have been brought in the Western District of Louisiana under maritime law because neither side argues that the defendants lack sufficient contacts with that district to be subject to personal jurisdiction there, and four of the defendants named in this action have already been sued in the Western District of Louisiana by Apache Corp. in an action arising from the same allision.[17]

### 3.  Analysis of the Private Interest Factors

Private interest factors to be considered in a § 1404(a) analysis include (a) the plaintiffs' choice of forum, (b) the convenience of parties and witnesses, (c) the cost of attendance of witnesses and other trial expenses, (d) the availability of compulsory process, (e) the relative ease of access to sources of proof, (f) the place of the alleged wrong, and (g) the possibility

---

[16]Plaintiffs' Response to GlobalSantaFe's Motion to Transfer Venue, Docket Entry No. 35, p. 2.

[17]See Complaint filed in Civil Action 06-1643 against GlobalSantaFe Corp., GlobalSantaFe Drilling Co., GlobalSantaFe South America, LLC, and GlobalSantaFe Hungary Services, LLC, Exhibit A attached to Docket Entry No. 18.

of delay and prejudice.  In re Volkswagen, 371 F.3d at 203 (citing Piper Aircraft v. Reyno, 102 S.Ct. 252, 258 & n.6 (1981)); accord In re Horseshoe, 337 F.3d at 433-34.

(a)  Plaintiff's Choice of Forum

Under Fifth Circuit precedent the plaintiffs' choice of forum is a factor to be considered but is neither conclusive nor determinative.  See In re Horseshoe, 337 F.3d at 434.  In this case the Southern District of Texas is also the principal place of business for one of the two plaintiffs, Pogo Producing Co., and for four of the five moving defendants.[18]  Since plaintiff's choice of forum is entitled to some deference, and since many of the parties have their principal places of business in the plaintiff's chosen forum, this factor weighs against transfer.

(b)  Convenience of Parties and Witnesses

The relative convenience to the witnesses is arguably the most important factor under § 1404(a).  See Dupre v. Spanier Marine Corp., 810 F.Supp. 823, 825 (S.D. Tex. 1993).  "It is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis."  State Street Capital Corp. v. Dente, 855 F.Supp. 192, 198 (S.D. Tex. 1994).

_____

[18]See plaintiff's Original Complaint, Docket Entry No. 1, p. 2 ¶ 2.

-14-

"[I]n considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses.  The convenience of one key witness may outweigh the convenience of numerous less important witnesses." Dupre, 810 F.Supp. at 825.  Movants "must specifically identify key witnesses and outline the substance of their testimony."  Id.

Defendants have listed several businesses as non-party witnesses and one non-party individual (Patrick Miller) who have their places of business and/or residences in Louisiana, have identified two party witnesses (Nick Mallory and Henry Tangere) as residing in Lafayette in the Western District of Louisiana, and have identified numerous party witnesses who are dispersed in states other than Texas or Louisiana.  Although defendants have not identified any of these potential witnesses as "key witnesses" and have not outlined the testimony that any of them are expected to provide, they have asserted that the most significant number of non-party witnesses are located in Louisiana and that a large number of party witnesses are dispersed in several states other than Texas.

Plaintiffs have identified many "key witnesses" based in Houston.  However, the vast majority of these "key witnesses" are employees of the movants, and none are employees of the plaintiffs. Among these Houston-based "key witnesses" are two non-party witnesses -- Doug DeVoy and Carol Reinier, who are employed by the warranty survey company that GlobalSantaFe hired to approve the

-15-

Adriatic II's location, a weather service -- and two employees of a Dutch company who spend "at least part of their time working in . . . Houston."[19]  Like defendants, plaintiffs have not provided a summary of the testimony they expect their named witnesses to provide.

Since the movants' employees are witnesses that can be compelled to attend the trial, and since plaintiffs have not summarized the testimony that they expect the two Houston-based, non-party witnesses to provide, the court is not persuaded that the location of these witnesses in the Southern District of Texas weighs heavily against transfer.  Moreover, because the trial of this case is likely to require the testimony of party and non-party witnesses from many different locations, including states other than Texas and Louisiana, the availability and convenience of witnesses is diminished as a factor in the change of venue analysis.  See Dupre, 810 F.Supp. at 826 ("The very nature of seamen's employment frequently makes them unavailable for trial, requiring the parties to submit the seamen's testimony in the form of depositions.").  Accordingly, this factor is neutral.

> (c)  Cost of Obtaining Witnesses and Other
>      Trial Expenses

Neither side has presented any evidence indicating that a trial in the Western District of Louisiana would prove more or less

---

[19]Plaintiffs' Response to GlobalSantaFe's Motion to Transfer Venue, Docket Entry No. 35, p. 6.

costly than a trial in the Southern District of Texas.  Moreover, defendants' assertion that potential witnesses are spread throughout the United States and possibly around the world strongly suggests that trial of this case will engender significant costs to both parties wherever it is held.  Since there is no evidence suggesting that transfer is likely to shift the burden of cost from the movant defendants to the non-movant plaintiffs, this factor is neutral in its transfer analysis.  See Goodman Co., L.P. v. A & H Supply Co., 396 F.Supp.2d 766, 776 (S.D. Tex. 2005) ("A case should not be transferred if the only practical effect is to shift inconvenience from the moving party to the nonmoving party.").

> (d)  Availability of Compulsory Process

The parties have not identified any unwilling witnesses who would be subject to compulsory process in the Southern District of Texas but not in the Western District of Louisiana, or vice versa. Consequently, this factor is neutral.

> (e)  Relative Ease of Access to Sources of Proof

Plaintiffs' claims are founded on the allegation that the Adriatic VII struck two of their platforms off the coast of western Louisiana.  Defendants assert that key physical evidence is more easily accessed from the Western District of Louisiana than from the Southern District of Texas because "the physical evidence is *all* located within the Western District of Louisiana or off the

coast of Louisiana on the bottom of the Gulf of Mexico."[20]
Defendants assert that parts of the deck of one of the two damaged
platforms are located in Intracoastal City, Louisiana; other items
of "hardware" that the plaintiffs claim belonged to the rig that
allided with the two platforms are located at Devon's Gulf Command
Center in Lafayette, Louisiana; and the closest access to Eugene
Island, Block 338, where the broken legs of the Adriatic VII are
still located on the seabed is by ship departing from the southern
coast of Louisiana at either Morgan City or Intracoastal City.[21]

Plaintiffs argue that most of the key evidence in this case is
located in Texas and not Louisiana. Key evidence identified by the
plaintiffs as located in Texas include (1) the Adriatic VII, which
is currently located at a shipyard in Orange, Texas;[22] (2) the
business records of the plaintiff, Pogo Production Co.; and
(3) defendants whose principal places of business are located in
Houston. Because the Adriatic VII's location in Orange, Texas, is
not located in either the Southern District of Texas or the Western
District of Louisiana, the Adriatic VII's location is a neutral
factor. Because the business records of the parties that

_____

[20]GlobalSantaFe's Reply to Plaintiffs' Response to the Pending
Motion to Dismiss and Alternative Motion to Transfer Venue, Docket
Entry No. 38, p. 6.

[21]Id.

[22]See Oral Deposition of Stuart William Sannan, Exhibit B
attached to Plaintiffs' Response to GlobalSantaFe's Motion to
Transfer Venue, Docket Entry No. 35, pp. 7 and 9.

plaintiffs assert are located in Houston are electronic records that are easily transported, while the physical evidence of the damaged rigs located in Louisiana is not easily transportable, and because the offshore sites at issue in this case are more easily accessed from the coast of Louisiana than the coast of Texas, the court concludes that the relative-ease-of-access-to-sources-of-proof factor favors transfer.

(f)  Place of the Alleged Wrong

The place of the alleged wrong is one of the more important factors in venue determinations.  Lemery v. Ford Motor Co., 244 F.Supp.2d 720, 732 (S.D. Tex. 2002).  Plaintiffs allege that this case is about an allision that occurred adjacent to the coast of western Louisiana.  Defendants argue that the offshore location of both the allision and the Adriatic VII's damaged legs are more easily accessed from the southern coast of Louisiana than from Texas.  For these reasons, and because plaintiffs have not alleged that any wrong occurred in Texas, this factor favors transfer.

(g)  Possibility of Delay and Prejudice

This factor only applies in "rare and special circumstances" and must be established by clear and convincing evidence.  In re Horseshoe, 337 F.3d at 434.  Neither party has suggested that a transfer to the Western District of Louisiana would result in a substantial delay in the resolution of this case.  The possibility

that a transfer may somewhat delay the ultimate resolution of a case cannot justify retaining a case that has no factual connection to the district in which it was brought.  This factor is neutral as to transfer.

4.  <u>Analysis of the Public Interest Factors</u>

Public interest factors to be considered in a § 1404(a) analysis include (a) the administrative difficulties flowing from court congestion, (b) the local interest in having localized interests decided at home, (c) the familiarity of the forum with the law that will govern the case, and (d) the avoidance of unnecessary conflict of law problems.  <u>See</u> <u>In re Volkswagen</u>, 371 F.3d at 203 (citing <u>Piper Aircraft v. Reyno</u>, 102 S.Ct. 252, 258 & n.6 (1981)).

(a)  Administrative Difficulties from Court Congestion

Although the parties have not pointed to any material administrative difficulties due to court congestion in either the Southern District of Texas or the Western District of Louisiana, another action brought against four of the defendants named in this action by Apache Corp. arising from the same events is pending in the Lafayette-Opelousas Division of the Western District of Louisiana.[23]  Defendants assert that the two actions, this one and

---

[23]See Complaint filed in Civil Action 06-1643, Exhibit A attached to Defendants' Motion to Dismiss and Alternative Motion to Transfer Venue, Docket Entry No. 18.

the action filed in the Western District of Louisiana, were filed simultaneously on the same day (September 22, 2006) in accordance with a "Joint Prosecution Agreement" entered by Apache Corp. and the plaintiffs in this action.[24]   Defendants argue that the "litigation strategy of two suits, in two different districts, seeking the same relief, is a lesson of how administrative difficulties and court congestion are created."[25] The court agrees that the interests of justice will not be served by the maintenance of two suits arising from the same occurrences in two separate district courts.   Although plaintiffs argue that "the only reason duplicitous litigation continues to exist is because GlobalSantaFe has refused to agree to consolidate the cases in Houston,"[26] this argument rings hollow in light of the fact that the two suits were filed on the same day in two different districts.   Accordingly, the court concludes that this factor favors transfer.

(b)   Local Interests

One plaintiff and several of the defendants maintain their principal places of business in Houston, located in the Southern District of Texas.   Texas has an interest in adjudicating the

---

[24]GlobalSantaFe's Reply to Plaintiffs' Response to the Pending Motion to Dismiss and Alternative Motion to Transfer Venue, Docket Entry No. 38, p. 7.

[25]Id.

[26]Plaintiffs' Response to GlobalSantaFe's Motion to Transfer Venue, Docket Entry No. 35, p. 9.

claims of its residents.  Nevertheless, defendants argue that the Western District of Louisiana has a strong local interest in this case because it "is home to a population that not only experienced the forces of [Hurricane] Rita firsthand, but also one that depends for its livelihood in providing services to the offshore oil exploration industry."[27]  Plaintiffs argue that this factor weighs against transfer because "the damage to the nation's oil and gas infrastructure caused by wayward MODUs [mobile offshore drilling units] is a matter which affects the entire country, not just the residents of southwest Louisiana.[28]  Regardless of the fact that damage caused by Hurricane Rita affected the entire country, the court is persuaded that this factor favors transfer because the facts that the allision at issue occurred adjacent to the western coast of Louisiana and that much of the physical evidence of that allision is located in Louisiana provide the Western District of Louisiana a greater interest in the trial of this case than the Southern District of Texas.  See In re Volkswagen, 371 F.3d at 206 (favoring the venue in which auto accident giving rise to the litigation occurred).  Accordingly, the court concludes that this factor favors transfer.

---

[27]GlobalSantaFe's Reply to Plaintiffs' Response to the Pending Motion to Dismiss and Alternative Motion to Transfer Venue, Docket Entry No. 38, p. 8.

[28]Plaintiffs' Response to GlobalSantaFe's Motion to Transfer Venue, Docket Entry No. 35, p. 13.

(c)  Familiarity With the Governing Law

The parties do not dispute federal law applies to this action because plaintiffs have alleged that the court's subject matter jurisdiction arises from either OCSLA, 43 U.S.C. § 1331, et seq., and/or from general maritime law, 28 U.S.C. § 1333.  However, defendants argue that Louisiana law may also apply because plaintiffs' complaint alleges that defendants violated "applicable state . . . statutes, rules, or regulations,"[29] and because "OCSLA . . . borrows adjacent state law as a gap-filler."[30]  See 43 U.S.C. § 1333(a)(2)(A) ("To the extent that they are applicable and not inconsistent with the subchapter or with other Federal laws and regulations . . . the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon.").

Because plaintiffs' complaint asserts claims based on both state and federal law, and because Louisiana law will be used to fill gaps in federal law under OCSLA, since the allision occurred

---

[29]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 13, ¶ 47.

[30]GlobalSantaFe's Reply to Plaintiffs' Response to the Pending Motion to Dismiss and Alternative Motion to Transfer Venue, Docket Entry No. 38, p. 9 & n.21 (quoting Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc., 448 F.3d 760, 772 (5th Cir.), cert. denied, 127 S.Ct. 670 (2006)).

-23-

off the Louisiana coast, the court concludes that this factor favors transfer because the state law that may be applicable to this case is Louisiana law and not Texas law.  Although this court is capable of applying Louisiana law, federal judges located in the Western District of Louisiana are more familiar with and better able to apply Louisiana law than is the undersigned judge.

     (d)  Avoidance of Unnecessary Conflict of Law Issues

Because the parties have not identified any conflict of law concerns in this case, this factor is neutral.

5.  <u>Conclusion on Section 1404(a) Motion to Transfer Venue</u>

Defendants have met their burden of showing that the factors and circumstances substantially favor transfer to the Western District of Louisiana because that forum would better serve the interests of the parties, the witnesses, and the judicial system. Although the bulk of the private interest factors are neutral, two of the most significant private interest factors -- relative ease of access to sources of proof and place of alleged wrong -- favor transfer, while only one private interest factor -- plaintiffs' choice of forum -- disfavors transfer.  Moreover, three of the four public interest factors favor transfer.

### III.  <u>Conclusions and Order Of Transfer</u>

Because the court has concluded that venue is proper in this district for claims that plaintiffs have asserted against the

moving defendants under both OCSLA, 43 U.S.C. § 1349(b) and general maritime law, defendants' Rule 12(b)(3) Motion to Dismiss for improper venue is **DENIED**.  Because the court has concluded that defendants have met their burden of showing that the plaintiffs could have brought their claims in the Western District of Louisiana, that three of the four public interest factors favor transfer, and that the bulk of the private interest factors either favor transfer or are neutral, defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is **GRANTED**.  Defendants' Motion to Dismiss and Alternative Motion to Transfer Venue (Docket Entry No. 18) is therefore **GRANTED IN PART** and **DENIED IN PART.**

This action is **TRANSFERRED** to the United States District Court for the Western District of Louisiana, Lafayette-Opelousas Division.

**SIGNED** at Houston, Texas, on this the 4th day of May, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE